**Carmen PARTNEY and Bina Partney, Plaintiffs–Respondents,**

v.

**R. Winston REED, Defendant–Appellant.**

No. 19152.

Missouri Court of Appeals,
Southern District,
Division One.

Nov. 3, 1994.

Motion for Rehearing or Transfer
Denied Nov. 28, 1994.

Application to Transfer Denied
Jan. 24, 1995.

---

Jeffrey P. Hine, Oliver, Oliver & Waltz, of Cape Girardeau, for defendant-appellant.

Christina L. Kime, L. Dwayne Hackworth, of Piedmont, for plaintiffs-respondents.

SHRUM, Chief Judge.

R. Winston Reed appeals from an order of summary judgment in favor of Carmen and Bina Partney on Reed's claim against the Partneys on a promissory note. We reverse and remand.

The Partneys sued Reed, alleging default on a different promissory note. In his counterclaim, Reed alleged that on January 27, 1987, the Partneys assigned to him a $30,000 promissory note, which is the subject of this appeal.

The note, made by a John Adkisson on April 29, 1986, was payable to the Partneys or their order and had a maturity date of August 27, 1986. On the face of the note, above the signatures of the Partneys, is this typed statement:

"Assignment:

This note is assigned to R. Winston Reed, P.O. Box 391, Van Buren, MO 63965, with recourse to the undersigned:"

Reed alleged the balance due on the note was $50,907.71 as of October 18, 1990, the date he filed his counterclaim. In paragraph 3 of his counterclaim, Reed alleged he had "many times made demand upon [the Partneys] to pay the Note" but they refused to pay. In paragraph 4, he alleged:

"On account of the non-payment of the Note assigned to [Reed] as referred to herein by the Maker thereof, and as a result of the assignment of the Note with recourse to [the Partneys], the sum of ... $50,907.71 ... is now due and payable to [Reed] in full."

Aside from admitting they were residents of Carter County, the Partneys denied Reed's allegations. Additionally, the Partneys alleged six "affirmative defenses," none of which was payment of the note.

In May 1991 the Partneys moved for summary judgment on Reed's counterclaim. Accompanying their motion was Carmen Partney's affidavit in which he stated he was personally acquainted with John Adkisson, that Adkisson was a resident of Carter County, Missouri, and was not insolvent, and that Reed had never sued Adkisson on the note.

In August, Reed filed his affidavit in opposition to the Partneys' motion for summary judgment, a first amended counterclaim and third party claim, and a motion for leave to file the first amended counterclaim and third party claim. The third party claim named John Adkisson as the defendant. In his affidavit, Reed averred "1. ... that all statements, matters, facts and allegations contained in his First Amended Counterclaim and Third Party Claim, a copy of which is attached hereto and made a part hereof as Exhibit 'A', are true and correct" and "2. ... that he has often times made oral demand and has made written demand upon Johnny Adkisson ... for the payment of the Note referred to in [the Partneys'] Motion for Summary Judgment."

In Exhibit A, the first amended counterclaim and third party claim, Reed alleged that he had paid the Partneys $32,164.24 for the assignment of the Adkisson note, that he "often" had made oral demand on both Adkisson and the Partneys for payment, that he had made written demand on July 29, 1991, on Adkisson and the Partneys, and that he had received no payment. He attached to and incorporated into Exhibit A photocopies of either the drawee's or remitter's copies of four cashiers checks, two of which are dated February 1, 1987, and two dated February 4, 1987. Named as remitter on each check was John Adkisson. Payee on three of the checks was Carmen Partney; payees on the fourth were Carmen and Bina Partney. Reed alleged the checks were evidence of his payment of $32,164.24 to the Partneys for their assignment of the Adkisson note to him.

On October 15, 1991, the trial court sustained the Partneys' motion for summary judgment, thus denying Reed recovery from the Partneys on his counterclaim. That judgment was reversed by this court in 1992 because the Partneys' summary judgment motion was defective, and the cause was remanded. *Partney v. Reed,* 839 S.W.2d 694 (Mo.App.1992).

After remand, the Partneys again moved for summary judgment, asserting three grounds in support of their motion. Without stating grounds for its decision and without findings of fact, the trial court sustained the Partneys' second motion for summary judgment. In his sole point on appeal, Reed challenges the three grounds relied on by the Partneys in their summary judgment motion.

*Ground I: Failure to Allege Dishonor by Maker After Assignment*

As ground I of their motion for summary judgment, the Partneys claimed Reed failed to allege dishonor of the note by Adkisson after the Partneys assigned it to Reed. Re-

lying on § 400.3–414,[1] they insisted that, without an allegation of dishonor, Reed failed to state a claim upon which relief can be granted, and, upon the authority of *Schwartz v. Lawson,* 797 S.W.2d 828, 833[12] (Mo.App. 1990), "summary judgment may issue on the pleadings alone."

On appeal, Reed makes these two arguments against ground I of the Partneys' summary judgment motion: his counterclaim sufficiently alleged dishonor, and the trial court should have considered Reed's August 1991 affidavit and its accompanying Exhibit A in which he alleged he had demanded payment from Adkisson. The Partneys reiterate the argument they made to the trial court.

▪ Section 400.3–507(1) provided, "An instrument is dishonored when ... (b) presentment is excused and the instrument is not duly accepted or paid." *Presentment* was defined as "a demand for acceptance or payment made upon the maker, acceptor, drawee or other payor by or on behalf of the holder." § 400.3–504(1). Presentment was excused in this case because the Partneys endorsed the note after its maturity date.

"Notwithstanding any provision of this section, neither presentment nor notice of dishonor nor protest is necessary to charge an endorser who has endorsed an instrument after maturity." § 400.3–501(4). *See Silk v. Merrill Lynch, Pierce, Fenner & Smith,* 437 So.2d 112, 115–16 (Ala.1983). Reed alleged in his counterclaim that the note remained unpaid. Thus the Partneys' ground I, limited to an attack on Reed's counterclaim petition, did not entitle them to summary judgment.[2]

▪ Moreover, the Partneys' reliance on *Schwartz* is misplaced. It is true that summary judgment may be based on the pleadings alone, *see, e.g., Sam Kraus Co. v. State Highway Comm'n,* 416 S.W.2d 639, 641[1] (Mo.1967), but *Schwartz* was not such a case. Here, the court had before it more than the pleadings; it also had Reed's affidavit and his Exhibit A, the first amended counterclaim. In the affidavit and the amended counterclaim, Reed averred that he had demanded, orally and in writing, payment from Adkisson.[3] In light of the pleadings, Reed's

1. Section 400.3–414, RSMo 1986, provided, in pertinent part, "(1) Unless the endorsement otherwise specifies (as by such words as 'without recourse') every endorser engages that upon dishonor and any necessary notice of dishonor and protest he will pay the instrument according to its tenor at the time of his endorsement...."

   Unless otherwise indicated, all citations to statutes in this opinion are to RSMo 1986. Article 3 of Missouri's Uniform Commercial Code was substantially amended in 1992. In addition to the substantive changes made in 1992, many new section numbers have no continuity with the repealed code sections applicable to this case.

2. Only the front of Adkisson's note appears in the legal file; Reed attaches a copy of the reverse side of the note to his brief and directs our attention to the following provision:

   "**WAIVER**—I waive (to the extent permitted by law) demand, presentment, protest, notice of dishonor and notice of protest. This means I give up the right to require the note holder to demand payments of the amount due or to give notice that amounts due have not been paid."

   The Partneys do not dispute the existence of this waiver provision and admit in their brief that "the terms of the Note itself waived any rights of presentment and notice of dishonor which [the Partneys] might have had." Despite that admission to this court, the record does not reveal that the reverse side of the Adkisson note was filed in the trial court or its contents re-

vealed to the trial court. We do not presume the trial court knew of the waiver and will not convict it of error for not considering the waiver provision.

3. In November 1991, after entry of the original summary judgment and prior to his appeal from that judgment, Reed changed lawyers. On November 19, 1991, the day before filing the notice of appeal, Reed's new lawyer filed a document that stated, "Comes now R. Winston Reed and dismisses the Third Party Petition without prejudice." Although the docket sheet indicates the first amended counterclaim was filed and summons was issued and returned on it, and the November 19 dismissal appears to affect the third party claim only, Reed and the Partneys now refer to the first amended counterclaim as nothing more than a "proposed" pleading, and they treat the original counterclaim as Reed's claim for relief that was before the trial court. Whatever the status of the first amended counterclaim, the facts alleged in it remained part of the record before the trial court because Reed, in his affidavit in opposition to the Partneys' motion for summary judgment, adopted the factual allegations of the first amended counterclaim. *See* Rule 55.12, which states, "Statements in a pleading may be adopted by reference in a different part of the same pleading or in another pleading or in any motion. An exhibit to a pleading is a part thereof for all purposes." We treat Exhibit A as an "exhibit to a pleading" within the mean-

affidavit, and Exhibit A, the Partneys' ground I did not entitle them to judgment as a matter of law.

### Ground II: Failure to Attempt Collection Against Maker

As their second ground for summary judgment, the Partneys asserted that, as a matter of law, Reed could not sue them as endorsers of the note due to his lack of diligence in pursuing collection from Adkisson. Their argument was that Reed, although a holder, was not a holder in due course because he took the note with notice that it was overdue, § 400.3–302(1)(c), and, therefore, he took the instrument subject to "all defenses of any party which would be available in an action on a simple contract." § 400.3–306(b). One such defense, the argument continued, is found in § 431.170, which provides, in pertinent part:

> "The assignee of a ... *nonnegotiable* note ... may maintain an action against the assignor, upon failure to obtain payment from the ... maker ... only in one of the following cases:
>
> (1) If he use due diligence in the institution and prosecution of a suit against the ... maker ... for the recovery of the money ...;
>
> (2) If the ... maker ... is insolvent, or is not a resident of this state...." (Emphasis ours.)

On appeal, Reed asserts the Partneys were not entitled to judgment as a matter of law because the note remained a negotiable instrument and, therefore, § 431.170 was inapplicable. We agree.

Section 400.3–104 provided:

(1) Any writing to be a negotiable instrument within this article must

(a) be signed by the maker or drawer; and

(b) contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this article; and

(c) be payable on demand or at a definite time; and

(d) be payable to order or bearer.

■ The negotiability of commercial paper is determined from the four corners of the instrument at the time it is issued without reference to extrinsic facts. 5A Ronald A. Anderson, *Anderson on the Uniform Commercial Code* § 3–104:13 at 116 (3d ed. 1994). *See First Fed. S. & L. Ass'n. v. Gump & Ayers Real Estate, Inc.,* 771 P.2d 1096, 1097 (Utah App.), *cert. denied sub nom. First Federal v. Air Terminal Gifts, Inc.,* 776 P.2d 916 (Utah 1989); *Holsonback v. First State Bank,* 394 So.2d 381, 383[2] (Ala.Civ.App. 1980), *cert. denied,* 394 So.2d 384 (Ala.1981). *See also* 5A Anderson, *supra,* § 3–202:56, where it is said, "An indorsement has no effect upon negotiability, without regard to the nature or terminology of the indorsement."

■ Because the note was payable to order, to be negotiated, it had to be delivered with any necessary endorsement. § 400.3–202(1). The Partneys delivered the note to Reed; that the Partneys wrote above their signatures "This note is assigned to R. Winston Reed" did not prevent their signatures from operating as an endorsement. § 400.3–202(4); Missouri Code Comment to § 400.3–202, 20A V.A.M.S. at 473 (1965); Uniform Commercial Code Comment 5 to § 3–202, 20A V.A.M.S. at 474 (1965); 5A Anderson, *supra,* § 3–202:43 at 495. *See Carnes v. Clark,* 1 Wash.App. 51, 459 P.2d 69, 70 (1969). It follows that the words of assignment did not transform the note into a nonnegotiable one.

■ When Adkisson made the note, it satisfied all the requirements of § 400.3–104(1), thus showing on its face that it was a negotiable instrument. The negotiability of the note was unaffected by the endorsement. Because the applicability of § 431.170 to notes is to nonnegotiable notes only, Reed did not have to plead and prove the conditions precedent described in that statute. Consequently, the Partneys' second ground

---

ing of Rule 55.12 and examine it as part of Reed's opposition to the Partneys' second motion for summary judgment. *See Johns v. Continental Western Ins. Co.,* 802 S.W.2d 196, 198 (Mo.App. 1991).

for summary judgment did not entitle them to judgment as a matter of law.[4]

### Ground III: Note Was Paid Rather Than Transferred

For ground III, the Partneys averred that the photocopies of the cashiers checks attached to Reed's affidavit conclusively showed that the Adkisson note had been "fully satisfied and thereby extinguished." They pointed out that the remitter on the cashiers checks was Adkisson, not Reed, and that the cashiers checks were dated February 1 and 4, 1987, dates that followed shortly the Partneys' negotiation of the note to Reed. From these facts they argued "the intent of the parties is clear" that the cashiers checks were from Adkisson in payment of the note.

On appeal, Reed argues there exists a genuine issue of material fact concerning payment of the note because he alleged nonpayment in his counterclaim and, in Exhibit A to his affidavit, he stated he gave the cashiers checks to the Partneys in exchange for the note. We agree that a genuine issue of material fact exists.

■■■■ Only evidentiary materials that are admissible or usable at trial can sustain or avoid a summary judgment. *American Family Mut. Ins. Co. v. Lacy*, 825 S.W.2d 306, 311[3] (Mo.App.1991). Before a writing can be admitted into evidence its proponent must show that it is, in fact, what it is claimed to be. William A. Schroeder, 23 *Missouri Practice: Missouri Evidence* § 900.1 at 363 (1992). *See Cummins v. Dixon*, 265 S.W.2d 386, 394[7] (Mo.1954). Absent a connection between the proffered writing and the material issues in the case " 'the evidence is simply irrelevant.' " Schroeder, *supra*, § 900.1 at 364 n. 2 (citing *Cook v. Hoppin*, 783 F.2d 684, 688 (7th Cir.1986)).

■■■■ The Partneys offered no evidence to establish the connection they claimed existed between the four cashiers checks and the Adkisson note. Standing alone and without authentication, the cashiers checks were not probative of the material issue for which the Partneys sought to offer them: proof that Adkisson paid the note. *See Lacy*, 825 S.W.2d at 311–12[4–5].

■■■■ The only foundation evidence regarding the checks is in Reed's affidavit in which he states the checks were payment by him to the Partneys in exchange for the note, and not as payment by Adkisson of the obligation. By both affidavit and pleading, Reed asserted that the note was unpaid. Once the note was produced and it appeared on its face to be unpaid, the burden to prove payment was imposed on the Partneys. *See Household Finance Co. v. Watson*, 522 S.W.2d 111, 114 n. 1 (Mo.App.1975); Uniform Commercial Code Comment 2 to § 3–307, 20A V.A.M.S. at 602 (1965). Thus, there remains a genuine issue of material fact regarding whether the note has been paid.[5]

Reed's point on appeal has merit. None of the grounds relied on by the Partneys for summary judgment entitled them to judgment as a matter of law.

We reverse and remand.

FLANIGAN and MONTGOMERY, JJ., concur.

---

4. None of the Partneys' case authorities supports their assertion that the note was somehow transformed from a negotiable note into a nonnegotiable one.

5. On appeal, the Partneys expand on the ground III argument they made to the trial court by calling our attention to portions of a deposition of Reed. The deposition is not in the record on appeal and we do not consider the statements that the Partneys attribute to it.