In The Matter of Edna B. WALDRON,
a Disabled Person.

Nos. 66340, 66446 and 66834.

Missouri Court of Appeals,
Eastern District,
Division Two.

Nov. 28, 1995.

Jeffrey Philip Dix, Peter L. Statler, Jackson, for appellant.

Walter S. Drusch, Jr., John A. Layton, Stephen E. Strom, Cape Girardeau, Karen Jolly Miller, Poplar Bluff, for respondent.

CRAHAN, Presiding Judge.

This case is the consolidation of three appeals by Edna Waldron ("protectee") from orders of the Circuit Court of Cape Girardeau County, Probate Division, relating to the appointment of her conservator. We affirm.

Because this is a court-tried case, the decree or judgment will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); Rule 73.01(c). None of the parties requested that

the probate court make specific findings of fact or conclusions of law, and only those required by statute were issued. See § 475.075.9 RSMo 1994.[1] All other factual issues are, therefore, deemed to have been found in accordance with the result reached, and the judgment must be affirmed under any reasonable theory supported by the evidence. *Brown v. Storz,* 710 S.W.2d 402, 403 (Mo.App.1986).

Protectee, who was 85 years old at the time of the hearing, was married to Leonard V. Waldron for fifty years until his death on March 21, 1991. The couple had two sons, Kenneth L. Waldron and Charles V. Waldron. On May 6, 1993, Charles filed an involuntary petition for appointment of a guardian and/or conservator for protectee. On June 14, 1993, protectee filed a voluntary petition requesting that Kenneth Waldron be appointed her conservator. The petitions were consolidated for hearing.

Permeating the dispute over a conservator for protectee is the considerable discord between Kenneth and Charles Waldron and accusations of misconduct on the part of each. Prior to Leonard Waldron's death, Kenneth obtained from his father approximately $400,000 which Kenneth considered to be a gift. No gift taxes were paid on the transaction. After Leonard Waldron's death, Kenneth acted as personal representative for Leonard's estate. Charles objected to Kenneth's handling of the estate. As part of a "settlement" between Kenneth and Charles, Kenneth signed two promissory demand notes, one for between $330,000 and $385,000 now held by the trust established by Leonard Waldron for the benefit of protectee, the other, for $85,000, held by protectee herself. Kenneth Waldron asserted this money was intended as a gift to him and that the demand notes were an accommodation designed to avoid adverse tax consequences to the estate. Kenneth also borrowed approximately $100,000 from protectee in the year prior to the hearing.

As to Charles Waldron, there is currently a suit filed by protectee against Charles and Edward D. Jones & Co. pending in Circuit Court of Cape Girardeau County which alleges that Charles misappropriated over $400,-000 from protectee. Charles is also accused of using $100,000 of protectee's money to build a home on his property and of withholding other substantial personal property of protectee.

Following the hearing, the court entered an order containing express findings that: 1) protectee is a disabled person and in need of a conservator; 2) protectee, though frail in body, has the capacity to understand her need for a conservator; 3) protectee's choice of Kenneth as her conservator was a reasonable choice for her to make; but 4) Kenneth Waldron is not suitable or qualified, even though he is able to provide a bond. The court then ordered that Kenneth, Charles, and protectee each submit the names of three potential conservators.

After the parties submitted their suggestions, the court appointed Richard Swaim, a person named by Charles Waldron, as conservator. The court later authorized the conservator to engage an attorney to defend protectee's appeal of his appointment, and to set aside $5,000 of protectee's funds to pay for court costs, administrative expenses, conservator fees, and attorney fees.

■ In her brief, protectee submits four multifarious and confusing points of error attacking the court's failure to name a limited conservator pursuant to §§ 475.075(10) and 475.080.2, its rejection of her choices for conservator, Kenneth Waldron or Dewey Keller, and its authorization of an administrative fund of $5,000 to defray costs and fees which may be incurred in defense of her appeal. The confusion arises in large part because protectee has chosen to frame her contentions in terms of a denial of due process and/or equal protection guaranteed by the Fourteenth Amendment to the United States Constitution "and similar provisions of the Constitution of the State of Missouri." These claims are in turn predicated on the erroneous premise that the trial court found protectee to be "a competent person."

The trial court made no finding that protectee was "a competent person." It found

---

1. All statutory references are to RSMo 1994.

protectee to be "a disabled person and in need of a conservator," as specifically alleged in both the voluntary petition filed by protectee and the involuntary petition filed by Charles Waldron. Nowhere in her brief does protectee challenge the sufficiency of the evidence to support this finding. Having voluntarily invoked the protection of the court based on an allegation that she is disabled, and in the absence of any claim that the court's finding is unsupported by substantial evidence, protectee has no basis for claiming that the resulting restrictions on her freedom are a violation of equal protection vis-a-vis non-disabled persons.

■ Nor do we discern any basis for protectee's contention that the court failed to consider less restrictive alternatives to appointment of a conservator. Protectee does not identify any lesser restrictions that would be supported by the evidence. Section 475.080.2, cited by protectee as authority for appointment of a limited conservator, applies only where the court finds the subject to be "partially disabled." As noted above, the court found protectee to be "disabled," not "partially disabled." In any event, it is apparent that protectee's constitutional and statutory hyperbole is essentially window dressing for protectee's true complaint which we address below—*i.e.*, that the trial court erred in rejecting her choices for conservator. The merits of that claim are properly resolved by reference to the statutory provisions directly governing the selection of the conservator.

■ Protectee urges that the court erred by not appointing Kenneth Waldron or Dewey Keller, protectee's first and second choices, as conservator. Protectee argues that once she was found competent, § 475.050[2] leaves the probate court with no discretion in choosing a conservator, and at that point protectee had an absolute right to choose her conservator.

Protectee seizes on language from *In re The Matter of the Estate of R.B. Potashnick,* 841 S.W.2d 714 (Mo.App.1992), to support the claim that once protectee was declared "competent" the Probate Division had no authority to appoint any conservator other than that selected by protectee. This reliance is misplaced. In the first place, as discussed above, the court made no finding that protectee is "competent." Moreover, §§ 475.050 and 475.062[3] simply require that when a voluntary petition for appointment of a conservator is filed and the protectee is determined to have the capacity to choose his conservator and makes a reasonable choice, "the court shall first consider the *suitability* of appointing the protectee's nominee before proceeding to the consideration of other persons." *In the Matter of Weissinger,* 720

---

**2.** In relevant part, section 475.050 provides:

1. Before appointing any other person as guardian of an incapacitated person or as conservator of a disabled person, the court shall consider the suitability of appointing any of the following persons who appear to be willing to serve:

(1) If the incapacitated or disabled person is, at the time of the hearing, able to make and communicate a reasonable choice, any eligible person nominated by him;

(2) Any eligible person nominated in a durable power of attorney executed by the incapacitated or disabled person, or in an instrument in writing signed by the incapacitated or disabled person and by two witnesses who signed at his request, before the inception of his incapacity or disability, at a time within five years before the hearing when he was able to make and communicate a reasonable choice;

(3) The spouse, parents, adult children, adult brothers and sisters and other close adult relatives of the incapacitated or disabled person;

(4) Any eligible person or, with respect to the estate only, any eligible organization or corporation, nominated in a duly probated will of such a spouse or relative executed within five years before the hearing.

2. Except for good cause shown, the court shall make its appointment in accordance with the incapacitated or disabled person's most recent valid nomination of a eligible person qualified to serve as guardian of the person or conservator of the estate....

**3.** Section 475.062.1 provides that the court may appoint the chosen conservator in a voluntary petition if the court follows certain procedures. First, the court must appoint counsel for the person. Second, the court must be satisfied that; (1) the alleged disability exists; (2) the disabled person wishes the appointment and has the capacity to understand the need for it; (3) the disabled person makes a reasonable choice of conservator; and (4) the person nominated as conservator is suitable, qualified and will accept the appointment. § 475.062.1, RSMo 1986.

S.W.2d 430, 435 (Mo.App.1986) (emphasis added).

■ In this case, the trial court's order of April 28, 1994 directly follows the framework established in § 475.062.1. The court found that protectee was represented by counsel. After a hearing, the court found protectee to be disabled and in need of a conservator. Protectee was found to desire the appointment of a conservator and to have the capacity to understand the need therefor. Protectee's choice of her son Kenneth was deemed reasonable in view of his close proximity and frequent contact with protectee. However, for a number of reasons, the court found Kenneth Waldron to be unsuitable and unqualified to serve, even though he was able to provide a bond. Specifically, the trial court found: 1) he has surrendered his Missouri Bar license and such suspension and surrender was partially based upon problems with money and fees of clients (*see In re Kenneth E. Waldron,* 790 S.W.2d 456 (Mo. banc 1990)); 2) he owes between $335,000 and $380,000 to the trust set up for the care of protectee by her late husband Leonard Waldron's will; 3) he is indebted to protectee for approximately $85,000 in addition to approximately $100,000 borrowed within the previous year; 4) there is dissension between the two brothers evidenced by a lawsuit entitled *Edna B. Waldron v. Charles V. Waldron and Edward D. Jones, In.,* Case No. CV693–435cc. This dissension gave the court concern as to Kenneth's ability to administer the $450,000 of assets involved in this lawsuit. These findings are supported by substantial evidence and are sufficient grounds for finding Kenneth Waldron unsuitable as conservator for protectee. *See, Couch v. Couch,* 824 S.W.2d 65 (Mo.App.1991); *Brown v. Storz,* 710 S.W.2d 402 (Mo.App.1986).

■ In the order of May 20, 1994, protectee's second choice as conservator, Dewey Keller, was found unsuitable because he is currently trustee for the trust established for protectee pursuant to Leonard Waldron's will. The court stated it wished to avoid even the appearance of impropriety or conflict of interest. Given the particular facts of this case, there is sufficient evidence to support the court's rejection of Dewey Keller as conservator, and to appoint an independent conservator having no connection to prior dealings between the parties. The rejection of Mr. Keller avoids potential conflicts that may arise if Mr. Keller should have to decide whether to honor liabilities incurred by protectee using funds from either the trust or her other assets. Thus, the court had "good cause" for disregarding both of protectee's choices for her conservator. *See,* § 475.050.2. Protectee has not identified any reason why the court's choice for conservator, Richard Swaim, is either unsuitable or unqualified. We find no error in the court's appointment.

■ In her remaining points, protectee posits error in the trial court's authorization of a $5,000.00 administrative fund to be used to defray professional fees and costs associated with the defense of her appeal. These contentions are, at best, premature and, at worst, moot. The court's order does not, by its terms, authorize the payment of any funds. It merely authorizes the conservator to set aside $5,000.00 of the estimated $450,-000.00 conservatory estate.[4] Conservator did not file any brief in this court and there is no indication that there will be any claim for fees associated with the defense of this appeal.[5] In the absence of any indication that there will, in fact, be a claim for fees and/or costs associated with this appeal, we decline to address these points further.

Judgment affirmed.

CRANDALL and DOWD, JJ., concur.

---

**4.** Inasmuch as there is statutory authority for payment of reasonable attorney's fees, (§§ 475.075.3, 475.265), court costs (§ 475.085.1), and compensation of guardians and conservators (§ 475.265), we know of no authority that would prohibit segregation of funds for these purposes.

**5.** On June 28, 1995, John Ferguson, Public Administrator, was substituted for Mr. Swaim, who resigned as conservator for protectee. Mr. Ferguson likewise declined to file a brief in this court.