In the ESTATE OF Elliott Scott ROGERS, Protectee,

Donna Gardner, Conservator, Appellant,

v.

Lynne BATTISTA and Christine Rogers, Respondents.

No. ED 82155.

Missouri Court of Appeals, Eastern District, Division Four.

Jan. 13, 2004.

Daniel H. Legear, St. Louis, MO, for appellant.

Frederick W. Drakesmith, Richard B. Fosher, St. Charles, MO, for respondent.

LAWRENCE G. CRAHAN, Judge.

Donna Gardner appeals the judgment holding her liable for improper purchases and transfers from the bank account of her deceased stepfather, Elliott Scott Rogers, and for failing to fulfill her duties as conservator of his estate. We reverse and remand with directions.

In February 2000, Ms. Gardner applied for and was appointed as emergency guardian and conservator for Mr. Rogers after he suffered a stroke. In early March, Mr. Rogers' two natural daughters, Lynne Battista and Christine Rogers ("Respondents"), filed a petition to remove Ms. Gardner and Ms. Gardner filed a petition for a permanent appointment as guardian and conservator and a petition to extend the emergency guardianship pending disposition of the pending matters.

By this time Mr. Rogers had sufficiently recovered from his stroke to testify at a hearing held on March 17, 2000 and at a second hearing held on May 11, 2000. At the conclusion of the second hearing, the trial court completed a docket entry/worksheet which contained the following findings by clear, cogent and convincing evidence:

> Respondent is INCAPACITATED, and his/her capacity to receive and evaluate information or to communicate decisions is impaired to such an extent as to render Respondent incapable of meeting (some) essential requirements for food, clothing, shelter, safety or other care so that serious physical injury, illness or disease is likely to occur.

> The extent of Respondent's physical and mental INCAPACITY to care for his/her person is (PARTIAL, to wit): See attached sheet.

On the attached sheet, the trial court specified the following:

> INCAPACITY:
> Respondent needs assistance in transportation to physicians, hospitals and other medical care providers, in housekeeping & laundry and shopping for food, clothing and other necessaries.

The trial court further found:

> Respondent is DISABLED, and his/her ability to receive and evaluate information or to communicate decisions is impaired to such an extent as to render Respondent unable to manage (some) of his/her financial resources.

> The extent of Respondent's physical and mental DISABILITY to manage his/her financial resources is (PARTIAL, to wit:) See attached sheet.

On the attached sheet, the trial court specified the following:

> DISABILITY:
> Respondent needs assistance in paying bills, writing checks and otherwise managing his financial resources.

The trial court further found:

> Respondent is (PARTIALLY) INCAPACITATED, and appointment of a (LIMITED) GUARDIAN is required, who should have and exercise all powers

and duties provided by law, except as otherwise ordered below; Donna Gardner is suitable and qualified to serve in such capacity, and has consented to act.

\* \* \* \*

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED—

That Donna Gardner be appointed (LIMITED) GUARDIAN of the person of Respondent by issuance of Letters of Guardianship (and said Letters of Guardianship shall limit the powers and duties of the Guardian to) See attached sheet.

That Donna Gardner be appointed (LIMITED) Conservator of the estate of Respondent by issuance of Letters of Conservatorship upon the filing of a bond, conditioned and approved according to law, in the amount of $5,000.00 (said Letters of Conservatorship shall limit the powers and duties of the Conservator to:) See attached sheet.

On the attached sheet, the trial court specified the following:

POWERS—GUARDIAN

Transporting Respondent to all medical care providers and facilities including admitting him to hospitals, shopping for food, clothing and other necessaries, assisting with laundry and housekeeping.

No mention is made of any powers or duties of Ms. Gardner as conservator.

The letters of limited guardianship of the person and limited conservator of the estate provided, in pertinent part:

KNOW YE THAT on the 11th day of May, 2000, Donna Gardner was appointed and has qualified as (guardian of the person) (and) (conservator of the estate) of Elliott Scott Rogers a (partially) (incapacitated) (and) (partially) (disabled) person.

By reason thereof, the above named (guardian) (and) (conservator) is authorized and empowered to assume and have (the care and custody of the person) (and) (charge of the estate) of the aboved-named (partially) (incapacitated) (and) (partially) (disabled) person, and to exercise the powers and perform the duties of such position under the supervision of the Court (as provided by law) (which are as follows:)

To assist the ward and protectee in paying bills, writing checks and help in managing other financial resources. Also to arrange for transportation to physicians, hospitals and other medical care providers, in housekeeping, laundry, shopping for food, clothing and other necessaries.

On the same date, the Court signed an additional notice of appointment of a limited conservator which specified, in pertinent part:

(The powers and duties of the conservator are limited to) transporting ward to all medical care providers and facilities including admitting him to hospitals, shopping for food, clothing and other necessaries, and in assisting with laundry and housekeeping.

Identical wording is included in the notice published in the *Marthasville Record* for four consecutive weeks in June, 2000.

On September 2, 2000, Elliott Scott Rogers died. In January, 2001, Respondents filed a petition for filing inventory and turnover settlement. In April, 2001, Ms. Gardner filed her verification as to status of assets and motion to discharge her as guardian/custodian and to cancel her bond. In that pleading, Ms. Gardner explained that she only exercised the limited duties specified by the Court and had never taken charge of or assumed any control over Mr. Rogers' assets. Thus, she had no income, expenses or assets to account for,

nor did she have any assets to turn over to the estate. Ms. Gardner attached a June 16, 2000 letter addressed to her from her attorney which stated that he had discussed the matter with Judge Sutherland, who issued the letters of guardianship and conservatorship, and that Judge Sutherland did not feel an inventory would be necessary unless further court proceedings were commenced. Ms. Gardner therefore requested to be released from her bond and discharged as limited guardian and conservator.

A hearing on Ms. Gardner's motion was scheduled for June 11, 2001. However, prior to any hearing Ms. Gardner agreed with Respondents to file a formal inventory and settlement to the date of death. In August, 2001, Ms. Gardner filed the agreed-upon inventory and settlement to death along with a petition for approval of the settlement and an order of discharge. Ms. Gardner filed copies of all checks that, to her knowledge, had been written on Mr. Rogers' accounts, along with copies of Mr. Rogers' bank statements. Ms. Gardner also reported the status and disposition of all of Mr. Rogers' assets that were known by her to have existed.

Respondents filed objections to the inventory and settlement and an answer to the petition. The trial court entered an order rejecting Ms. Gardner's settlement without a hearing and ordering that an amended settlement be filed forthwith. After Ms. Gardner filed an amended settlement, Respondents again filed objections and the trial court set the matter for hearing.

Ms. Gardner was the only witness at the hearing. Ms. Gardner explained that at the time she was appointed conservator, Mr. Rogers had four bank accounts at Allegiant Bank, a checking account jointly titled in Mr. Rogers' and Ms. Gardner's names, a savings account and two certificates of deposit. The savings account and the certificates of deposit were titled in Mr. Rogers' name with pay on death (POD) directions in favor of Ms. Gardner. The checking account had been jointly titled since September, 1999, several months before Mr. Rogers suffered the stroke that prompted Ms. Gardner to seek appointment as emergency guardian and conservator.

According to Ms. Gardner, she would usually ask Mr. Rogers' permission before writing checks on the joint checking account. Mr. Rogers repeatedly told her she should treat the account as her money. Ms. Gardner's only involvement in Mr. Rogers' financial affairs was to write checks whenever he directed her to do so. Mr. Rogers never instructed her about where to deposit any receipts and she never filled out any deposit slips for him or endorsed any checks.

Aside from interest, deposits made to Mr. Rogers' accounts consisted of payments from a John F. Rogers Trust that were payable to Mr. Rogers. Mr. Rogers endorsed these checks and deposited two payments into the joint checking account and one into his separate savings account. Mr. Rogers had also arranged for his social security and pension benefits to be deposited directly into the joint checking account.

Ms. Gardner identified and offered into evidence copies of approximately 300 checks she wrote on the joint checking account during the period of her conservatorship. The vast majority of the checks were for groceries, housekeeping, maintenance of Mr. Rogers' house and car, Mr. Rogers' utilities and attorney's fees. Some of the payments were for Ms. Gardner's personal expenses. She issued checks for getting her nails done and made payments on her mortgage and other

household bills.[1] She also wrote a check in payment for a will and trust for Mr. Rogers which he executed about two weeks before his death. Mr. Rogers transferred $35,000 from his savings account to the joint checking account to help pay for an $85,000 annuity Mr. Rogers purchased for her benefit. Mr. Rogers completed and signed the application for purchase of the annuity from American Investors Life Insurance Company and Ms. Gardner wrote the check on the joint account at Mr. Rogers' direction and in his presence.

In her amended Order and Judgment, which essentially adopted verbatim the proposed findings and conclusions submitted by Respondents, the trial judge held that Ms. Gardner's powers and duties as conservator of Mr. Rogers' estate were in no way limited and were "similar to those that an individual with full conservatorship duties and powers would be required to render." The court specifically found that Ms. Gardner was not a credible witness. The court found that Ms. Gardner made transfers in violation of Section 475.130,[2] made improper and unauthorized purchases, and made no proper accounting of Mr. Rogers' cash. She was held personally liable for the amount of the improper purchases and for withdrawals from the estate for which there had been no proper accounting. The payment for Mr. Rogers' will and trust was found to be improper and the will and trust were declared to be invalid and void. Ms. Gardner was ordered to prepare an amended petition for settlement reflecting the Court's findings and showing that all sums found to have been improperly withdrawn have been replaced in the accounts from which they were drawn. All amounts deposited in the joint checking account at Mr. Rogers' direction during the period of the conservatorship were to be placed in a separate account. This appeal followed.

■ In this court-tried case, we will sustain the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We accept as true the evidence and reasonable inferences therefrom in the light most favorable to the judgment and disregard all contrary inferences. *Kueffer v. Brown*, 879 S.W.2d 658, 660 (Mo.App.1994). We will set aside the trial court's decision only when we are firmly convinced that the judgment is wrong. *Evans v. Werle*, 31 S.W.3d 489, 491 (Mo.App.2000).

■ On appeal, Ms. Gardner asserts nine points of error, only some of which need be addressed to resolve this appeal. In her first point, Ms. Gardner claims the trial court erred in finding that the court order appointing her as conservator did not limit her powers and that she was granted powers and duties similar to those of an individual with full conservatorship powers because the court's order expressly appointed her as a limited conservator and did not grant her any power or authority to take charge of or to control any of Mr. Rogers' property or assets. In a related point, Ms. Gardner claims the trial court erred in striking from the transcript evidence of Judge Sutherland's comments at the conclusion of the May 11, 2000 guardianship hearing that "Mr. Rogers seems capable of making his own financial decisions." Ms. Gardner claims that such evidence was not offered to contradict, dis-

---

1. Ms. Gardner testified she repaid Mr. Rogers in cash for her mortgage payment and electric bill.

2. All statutory references are to RSMo 2000.

pute or impugn the judgment, nor was it offered as a substitute for the court's judgment. Rather, such evidence was admissible to explain the partially ambiguous court's order which appointed Ms. Gardner as limited conservator but failed to specify any powers to be exercised by Ms. Gardner in her capacity as limited conservator. Both of these points have merit.

■■■ The construction of a court order is a question of law. *Estate of Ingram v. Rollins*, 864 S.W.2d 400, 402 (Mo.App. 1993). Where a question of law is involved, it is a matter for the independent judgment of the reviewing court. *House of Lloyd, Inc. v. Director of Revenue*, 824 S.W.2d 914, 916 (Mo. banc 1992). No deference is due the trial court's judgment. *Estate of Ingram*, 864 S.W.2d at 403.

It is undisputed that, by its express terms, Judge Sutherland's order found Mr. Rogers to be only partially disabled. Where a court finds the subject of a conservatorship proceeding to be "partially incapacitated" or "partially disabled," section 475.080 applies. *Matter of Waldron*, 910 S.W.2d 837, 840 (Mo.App.1995). Section 475.080 provides:

**Appointment of limited guardian or conservator.**——1. If the court, after hearing, finds that a person is partially incapacitated, the court shall appoint a limited guardian of the person of the ward. The order of appointment shall specify the powers and duties of the limited guardian so as to permit the partially incapacitated ward to care for himself commensurate with his ability to do so and shall also specify the legal disabilities to which the ward is subject. In establishing a limited guardianship, the court shall impose only such legal disabilities and restraints on personal liberty as are necessary to promote and protect the well-being of the individual and shall design the guardianship so as to encourage the development of maximum self-reliance and independence in the individual.

2. If the court, after hearing, finds that a person is partially disabled, the court shall appoint a limited conservator of the estate. The order of appointment shall specify the powers and duties of the limited conservator so as to permit the partially disabled person to manage his financial resources commensurate with his ability to do so.

We have carefully reviewed Judge Sutherland's docket entry/worksheet, the letters of limited guardianship and limited conservatorship and the notice of appointment of a limited conservator prepared and signed by the court and can find nothing which purports to give Ms. Gardner any decisional or custodial control over Mr. Rogers' financial assets. We note that section 475.078 expressly provides that a person such as Mr. Rogers who had been adjudicated partially incapacitated and partially disabled shall be presumed to be competent. Mr. Rogers was merely found to need assistance in paying his bills, writing checks[3] and otherwise managing his financial affairs. The court made no finding that Mr. Rogers suffered from any inability to make his own financial decisions. Given the absence of any findings suggesting in any way that Mr. Rogers was incapable of making his own financial decisions, it would be incompatible with section 475.080.2 to construe the court's failure to set forth the powers and duties of the limited conservator as intended to transfer complete decisional and custodial

**3.** Mr. Rogers apparently still suffered from some lingering paralysis that limited his ability to perform these physical tasks.

control of his assets to Ms. Gardner. Such a construction would not have permitted Mr. Rogers to manage his financial resources commensurate with his ability to do so. We find that the trial court clearly erred in construing Judge Sutherland's order to give Ms. Gardner complete decisional and custodial control over Mr. Rogers' assets.

To the extent that Judge Sutherland's docket entry can arguably be viewed as ambiguous in failing to set forth any powers and duties to be exercised by Ms. Gardner as limited conservator, the trial court further erred in refusing to consider Judge Sutherland's oral findings made on the record at the close of the conservatorship proceeding in regard to Mr. Rogers ability to manage his own financial affairs. At the conclusion of the May 11, 2000 hearing, Judge Sutherland observed:

> ... I think with the evidence that we've heard at the prior hearing, I don't think either a full conservatorship or full guardianship is necessary, I propose that it be limited. I'm not quite sure how....Mr. Rogers seems capable with perhaps assistance in the writing out of checks or making deposits in the bank. He's capable of making his own financial decisions. He needs somebody to take him to the hospital if he has a stroke or some other problem. Get his medications. Make sure he gets his medications, that sort of thing. But probably not much more.

 In construing an ambiguous judgment, a court should ascertain the intention of the court in entering the order. *Jacobs v. Georgiou*, 922 S.W.2d 765, 769 (Mo.App.1996). "[A] trial judge's oral comments, although not part of the court's judgment, may be considered as an explanation of the judgment." *St. Pierre v. Director of Revenue*, 39 S.W.3d 576, 578 (Mo.App.2001). Although this court typi-

cally disregards a trial court's oral statements made in ruling on an issue because such statements are not part of the trial court's order or judgment, those statements may be considered only as an explanation of the order or judgment. *In the Matter of Fulton*, 863 S.W.2d 931, 933 (Mo.App.1993). The court may consider such comments so long as they do not oppose, dispute, or impeach the judgment and are not used as a substitute for the judgment. *Thornton v. Deaconess Medical Center–West*, 929 S.W.2d 872, 873 (Mo.App.1996).

We hold that the trial court abused its discretion in sustaining Respondents' objection to consideration of Judge Sutherland's remarks. Had the trial court properly considered Judge Sutherland's comments, it would have been apparent that Respondents' contention that Ms. Gardner's powers and duties were similar to a full conservatorship was completely contrary to Judge Sutherland's clearly expressed intent. Judge Sutherland never intended for Ms. Gardner to take custody of Mr. Rogers' assets or to have any decisionmaking role with respect to how such assets were invested or expended. Thus, the trial court clearly erred in requiring Ms. Gardner to account for deposits to or expenditures from Mr. Rogers' accounts during the term of her limited conservatorship. Points sustained.

 In her second point, Ms. Gardner claims the trial court erred in holding her personally liable for Mr. Rogers' purchase of an $85,000 annuity for her benefit, the deposit of trust funds into the joint checking account, the deposit of Mr. Rogers' pension and social security benefits into the joint checking account and the transfer of $35,000 from Mr. Rogers' savings account to the joint checking account. We agree. The uncontroverted evidence is that those transactions were carried out by

Mr. Rogers personally or at his express direction and not by Ms. Gardner acting as Mr. Rogers' limited conservator. The purchase of the annuity was personally initiated by Mr. Rogers and he signed the application. He directed Ms. Gardner to write the check in payment as she was empowered to do as limited conservator. Mr. Rogers was the owner of the annuity during his lifetime. As a matter of law, the transaction did not violate section 475.190 because it was not an investment made by a conservator.

The deposits of trust funds Mr. Rogers received from the John F. Rogers Trust were all endorsed personally by Mr. Rogers and were made pursuant to his written instructions. Ms. Gardner played no role in making these deposits. Nor did Ms. Gardner play any role in the automatic deposits of Mr. Rogers' pension and social security benefits into the joint checking accounts. Arrangements for such automatic deposits were made personally by Mr. Rogers at least a few months before he suffered his stroke. Moreover, nothing in the court order appointing Ms. Gardner as limited conservator gave her any power to change such arrangements.

The check that transferred $35,000 from Mr. Rogers' savings account to the joint checking account to provide funds for the annuity was personally signed and endorsed by Mr. Rogers. There is no evidence that Ms. Gardner played any role in this transfer whatsoever, other than driving Mr. Rogers to the bank.

Based on the foregoing, we hold that holding Ms. Gardner personally liable for the transactions discussed immediately above is unsupported by substantial evidence. Point two is sustained.

■ In her third point, Ms. Gardner asserts the trial court erred in finding that the will and trust Mr. Rogers had prepared during the conservatorship were invalid and void because the court had no jurisdiction to make that finding and there was no substantial evidence to support such a finding. We agree.

The trial court's stated reason for holding that the will and trust were invalid and void was not based on any evidence concerning the will and trust or the circumstances surrounding their execution or any evidence as to Mr. Rogers' competency. Rather, the court held the will and trust invalid and void because Ms. Gardner never obtained court approval to pay for them. Whether the payment was authorized has nothing to do with whether the will and trust were valid instruments. That is a matter that can only be determined in a will contest instituted pursuant to section 473.083. *Estate of Johnson v. Powell*, 708 S.W.2d 783, 784 (Mo.App.1986). The instant action was not a will contest and the trial judge had no jurisdiction to hold the will and trust to be invalid and void. Point three is sustained.

■ In her fourth and fifth points, Ms. Gardner urges that the trial court erred in holding her personally liable for various checks drawn on and withdrawals made from the checking account she jointly owned with Mr. Rogers on the basis that she failed to obtain court approval for them, or failed to account for them, or they were prohibited by section 475.322, or they were not expenditures for Mr. Rogers' benefit. Ms. Gardner claims that the trial court misapplied the law because it is undisputed that she was at all times a joint owner of the account and had been for some time prior to her appointment as limited conservator and therefore had the right, as a matter of law, to expend such funds for any purpose without court approval and regardless of whether the expenditures were for Mr. Rogers' benefit. We agree.

As discussed in the first point, nothing in the court's order appointing Ms. Gardner as limited conservator gave her any decisional or custodial control over Mr. Rogers' finances. None of the expenditures she made from the joint checking account were made in her capacity as limited conservator. Indeed, nothing in the court's order gave her any authority to write checks on any of Mr. Rogers' accounts whatsoever. Rather, Ms. Gardner's authority to write checks on the joint checking derived solely from the fact that she was a joint owner of the account and had been for a considerable period predating her appointment as limited conservator. A joint account is the property of those persons so named as joint tenants and may be paid to any one of such persons during his lifetime or to any of the survivors of them after the death of any one or more of them. Sections 362.470, 369.174. Even the adjudication of incompetency of any one of the joint tenants does not operate to sever the joint tenancy or alter the rights of the other joint tenant or tenants. Section 362.470.4.

Because all of Ms. Gardner's expenditures from the joint checking account were made pursuant to her lawful rights as joint owner of the account and not pursuant to her appointment as Mr. Rogers limited conservator, she should never have been required to account for such expenditures. Nor can she be held personally liable for such expenditures.[4] Points sustained.

In her sixth point, Ms. Gardner claims that the trial court erred in holding her liable for a $2,200 insurance check issued to Mr. Rogers because there is no substantial evidence that she ever had possession or control of such check and it erroneously applies the law because she was not granted any power to control disposition of the check so as to be required to account for it. We agree.

The only evidence on this subject at trial was that Ms. Gardner was aware that Mr. Rogers had received a check from Allstate Insurance Company for some property damage during the period of the conservatorship. She assumed he had deposited it into one of his accounts but did not really know whether he deposited or cashed it or made some other disposition. There is no evidence whatsoever that Ms. Gardner ever had possession of the check or had anything to do with its disposition. As discussed in the first point, as limited conservator, she was not granted any powers to make any disposition of the check. Thus, we agree that there is no substantial evidence to support the trial court's determination that Ms. Gardner exercised any possession or control over the check or had any obligation to account for it. Point sustained.

Our disposition of the foregoing points makes it unnecessary to address Ms. Gardner's remaining points on appeal. We reverse the judgment and remand with directions to accept Ms. Gardner's original verification of assets, to discharge Ms. Gardner from her appointment as limited guardian and conservator, and to release her bond.

BOOKER T. SHAW, P.J., and GEORGE W. DRAPER III, J., Concur.

---

4. It is perhaps worth noting that the remedy proposed by Respondents and ordered by the trial court is wholly illusory. Ms. Gardner was ordered to file an amended accounting reflecting that all of the "improper" expenditures had been repaid to the accounts from which they had been made. Upon Mr. Rogers death, Ms. Gardner became the sole owner of such accounts. Thus, she would be restoring funds to her own account.