**Robert O. SAUNDERS, Petitioner,**

v.

**Michael BOWERSOX, Respondent.**

No. 27068.

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 15, 2005.

Robert O. Saunders, pro se.

Jeremiah W. (Jay) Nixon, Atty. Gen., Michael J. Spillane, Jefferson City, for respondent.

### ORIGINAL PROCEEDING IN HABEAS CORPUS

KENNETH W. SHRUM, Presiding Judge.

This is a habeas corpus case in which Robert Saunders ("Petitioner") seeks release from imprisonment in Missouri's south central correctional center.[1] The premise of his claim of unlawful confinement is that the sentencing court lacked authority to revoke his probation and order him to serve a ten-year sentence on a first-degree assault charge; that this is so because the purported probation revocation and order of confinement came after his probationary term had expired. This court orders Petitioner discharged from confinement.

### FACTS

On May 28, 1997, the State of Missouri charged Petitioner with unlawful use of a weapon, case 971–1365 ("Case 1").[2] The State indicted Petitioner for first-degree assault on August 4, 1997. This was case 971–2417 ("Case 2").

Petitioner pled guilty to both offenses on March 17, 1998. On that date, the court sentenced Petitioner to a two-year term in Case 1 and ten years in Case 2. The court ran the sentences concurrently and committed Petitioner to the department of corrections. This was done "pursuant to section 559.115." [3]

Later, the trial court exercised its section 559.115 discretion to recall Petitioner from incarceration and placed him on probation. This occurred on August 19, 1998. The term of probation was three years in both cases. Supervision by the board of probation and parole began September 4, 1998.

Once released, Petitioner violated his probation conditions repeatedly by, *inter alia*, using illicit drugs and failing to report. As part of this, Petitioner's probation officer issued a violation report dated January 31, 2001, in which she recommended an order of suspension, issuance

---

1. Michael Bowersox ("Respondent" herein) is superintendent of the facility where Petitioner is confined.

2. Both underlying cases were filed in the twenty-second judicial circuit, City of St. Louis.

3. Under section 559.115, the circuit court has the power to grant probation "anytime up to one hundred and twenty days after such defendant has been delivered to the custody of the department of corrections."

of a capias warrant and revocation of Petitioner's probation. The docket sheets in both Case 1 and 2 recite that a probation violation notice was filed January 31 and a capias warrant was ordered that date. However, there is neither a docket entry showing an order of suspension of Petitioner's probation in conjunction with that capias, nor is there an order to that effect in either case.

By March 23, 2001, Petitioner had been apprehended and jailed. He then posted bond and was released from custody on that same day. Almost immediately, however, Petitioner tested positive for marijuana and opiates. This triggered another probation violation report dated April 10, 2001. Again, Petitioner's probation officer recommended probation revocation; consequently, the trial judge again directed the issuance of a capias warrant.

Inexplicably, however, the capias warrant was issued only in Case 1. There were no docket entries and no orders made in Case 2 between March 30 and September 28, 2001. On the latter date, the court entered an order suspending Petitioner's probation in Case 2 and directed issuance of a capias warrant.

A revocation hearing in Case 1 was held August 28, 2001, i.e., seven days before Petitioner's probationary term ended. At the conclusion of the hearing the court revoked probation via a written judgment and committed Petitioner to the custody of the department of corrections for a term of two years. This judgment and sentence pertained to Case 1 only.

Since Petitioner was incarcerated only on the two-year sentence and because Petitioner had jail time credit, the department of corrections determined Petitioner had a conditional release date of October 1, 2001. Before his release, however, the trial court issued its September 28, 2001, order suspending his Case 2 probation.

This happened twenty-four days after Petitioner's probationary term expired in Case 2. Later, on November 8, 2001, the court revoked Petitioner's probation in Case 2. Petitioner was then delivered to the department of corrections to serve the remainder of his ten-year sentence.

Petitioner filed a petition for writ of habeas corpus with the proper circuit court which was denied. Petitioner then filed this original action here requesting habeas corpus relief.

## DISCUSSION AND DECISION

 Petitioner's writ application alleges the twenty-second judicial circuit court was without jurisdiction to revoke his probation in Case 2 after September 4, 2001. Petitioner correctly notes that, "[n]ormally, the circuit court's jurisdiction to revoke probation ends when the probationary period expires." *Cline v. Teasdale*, 142 S.W.3d 215, 221[4] (Mo.App. 2004). He asserts that this rule governs here and he is entitled to immediate release from the department of corrections.

Respondent counters with three arguments. The first two of these rely on a document dated January 31, 2001, which Respondent attached to his answer to the writ application. This document, reproduced in an appendix to this opinion, purports to be an unfiled trial court order suspending Petitioner's probation in Case 2 as of January 31, 2001. Relying on that, Respondent argues Petitioner's probation was suspended January 31 and was "never reinstated;" consequently, the "three-year term" of probation in Case 2 did not expire September 4, 2001, nor had it expired by November 8, 2001, when it was finally revoked.

Respondent's second argument is based on that same January 31 document and section 559.036. This statute allows the

circuit court to revoke probation after the term has ended in certain circumstances. Subsection 6 of section 559.036 reads:

"The power of the court to revoke probation shall extend for the duration of the term of probation ... and for any further period which is reasonably necessary for the adjudication of matters arising before its expiration, provided that some affirmative manifestation of an intent to conduct a revocation hearing occurs prior to the expiration of the period and that every reasonable effort is made to notify the probationer and to conduct the hearing prior to the expiration of the period."

Relying on section 559.036(6), Respondent asserts that the trial judge made manifest his intent to revoke probation in Case 2 on January 31, 2001, by issuing a capias warrant and ordering probation suspended on that date. He then claims there was no unreasonable or prejudicial delay in conducting Petitioner's revocation hearing because Petitioner was in "absconder status" or in the penitentiary serving time on Case 1 for much of the period between January 31, 2001, and November 8, 2001.

Respondent's first and second arguments fail, however, because they rely on matters wholly outside the record, i.e., the January 31 document.

To explain, on August 15, 2005, this court ordered Respondent

"to file copies of the following in this court on or before August 22, 2005:(1) Any and all probation violation reports filed in City of St. Louis Circuit Court Case Nos. 971–1365 and/or 971–2417; (2) any notice, warrant or other process issued by the circuit court to petitioner ... in connection with any alleged probation violations in City of St. Louis Circuit Court Case Nos. 971–1365 and/or 971–2417; and (3) complete docket sheets in City of St. Louis Circuit Court Case Nos. 971–1365 and 971–2417. *All such documents shall be certified by the clerk of the Circuit Court of the City of St. Louis.*"

Respondent complied with this order and, in addition, filed with this court numerous pages of records from the Missouri board of probation and parole pertaining to Petitioner. The latter was accompanied by an affidavit of the custodian of such records, which said affidavit complied with section 490.692. None of these records, however, contained the January 31 document.

The first appearance of the January 31 document in our court came when Respondent filed his answer. It does not bear a file stamp, nor has it been authenticated, nor has its authenticity been supported by affidavit or other means. The only attempt at identification of this document is in footnote 3 of Respondent's brief, where the following is found: "This document was not in the certified documents supplied by the St. Louis City Circuit Clerk's office. The document was faxed and mailed to Respondent by [the trial judge], as it was in the court's file on the case but apparently not the clerk's file."

■ Respondent's attempted use of the subject document runs afoul of two well-established principles. First, when the inquiry in a habeas case is whether the judgment or sentence is void, the habeas court will normally not look beyond the judgment of the sentencing court. 39 C.J.S. *Habeas Corpus*, § 148 (2003). "The record imports verity, and is not open to contradiction or impeachment in the habeas corpus proceedings." *Id.* In a similar vein, Missouri courts generally limit habeas corpus proceedings to determining the facial validity of the confinement. *State ex rel. Nixon v. Jaynes*, 73 S.W.3d 623, 624[1] (Mo.banc 2002); *Taylor v. State*, 51 S.W.3d

149, 151[2] (Mo.App.2001); Rule 91.01; § 532.010.

█ Second, Respondent's attempted reliance on the January 31 document fails because it was not authenticated. Before a writing can be admitted into evidence, whether it be a private document or public record, it must be authenticated, i.e., the proponent thereof must show that it is, in fact, what it is claimed to be. *Partney v. Reed,* 889 S.W.2d 896, 901[12] (Mo.App. 1994); *Schmitz v. Dir. of Rev.,* 889 S.W.2d 883, 887 (Mo.App.1994). *See Cummins v. Dixon,* 265 S.W.2d 386, 394[7] (Mo.1954). *See also* William A. Schroeder, 23 *Missouri Practice: Missouri Evidence,* § 900.1 (2000). Whatever classification is given the January 31 document, the fact remains it was not authenticated. Absent a connection between it and the material issues in the case, the document is simply irrelevant and should not be considered by this court. *Partney,* 889 S.W.2d at 901.

Without the January 31 document as support, Respondent's first two arguments fail. They simply do not support Respondent's request that we deny Petitioner relief.

More than that, however, Respondent's first two arguments would fail even if we accepted Respondent's explanation about the source of the January 31 document, treated it as authentic, and considered it as admissible evidence. As noted before, Respondent's first argument is that the January 31 suspension order tolled the time that Petitioner was to serve on probation, i.e., probation did not end on September 4 and was in limbo when probation was revoked on November 8. However, the notion that probation can be suspended indefinitely was answered adversely to Respondent in *State ex rel. Limback v. Gum,* 895 S.W.2d 663 (Mo.App.1995). As such, Respondent's first argument also fails for this reason.

As to Respondent's second argument (based on section 559.036.6), it is refuted by what the record shows. This follows because even if we found the January 31 document manifested an intent by the trial court to conduct a revocation hearing in Case 2, we could only conclude that it was unreasonable to wait until November 8 to do so. Petitioner was before the court on August 28 and the court could easily have conducted a hearing and revoked probation in Case 2 at that time. He was also in custody at least twice after January 31, but before August 28, 2001. These incarcerations were on warrants issued by the trial judge; consequently, the judge could have conducted a Case 2 revocation hearing during those periods. However, he did not do so. As such, the court did not make "every reasonable effort ... to conduct [a] hearing prior to the expiration of the [probationary] period." § 559.036.6. Moreover, if the court intended to manifest its intent on January 31, why did it issue another warrant and suspension in Case 2 on September 28? Respondent provides no reasonable explanation for these discrepancies. For these reasons, Respondent's second argument lacks merit even if the January 31 document is treated as part of the record this court should consider.

Respondent's third argument is that probation was actually revoked in Case 2 on August 28 during the revocation hearing on Case 1; that even though revocation in Case 2 was not memorialized by the order that came out of that hearing, the trial judge's comments (as revealed by the transcript) indicated an intent to revoke probation in Case 2. Continuing, Respondent says what happened here "is analogous to a sentencing hearing in a criminal case at which a sentence is ordered imposed or executed, and the principal[sic] that the sentencing court's intent, made manifest in the sentencing transcript, con-

trols over the written judgment applies making the revocation in case 971–2417 [Case 2] timely."

This argument has two parts. First, Respondent references two excerpts from the August 28 transcript which he says show the judge's intent to revoke probation in Case 2. The first is this: "[By the Judge] Sentence set by this Court pursuant to its decision on 3–17, 1998 will hereby be carried out *with respect to all counts* in this case." (Emphasis supplied.) Respondent points out that Case 1 and Case 2 each had only one count. He argues, therefore, that the "all counts" comment "only makes sense if the Court thought it was revoking the counts in both cause numbers." In a similar vein, Respondent cites to the transcript where the judge specifically rejected defense counsel's request to revoke probation in Case 1 only, and leave Petitioner on probation as to Case 2.[4] According to Respondent, this colloquy would make "no sense if the assault probation [Case 2] was not viewed by the Court and parties as being before the Court."[5]

■ Respondent starts the second prong of his third argument by pointing out that in *criminal* cases, the oral pronouncement of sentence will govern over the written judgment when the two are in material conflict. *State v. Patterson,* 959 S.W.2d 940, 941[1] (Mo.App.1998). He insists that this criminal law principle should

attend here, even though this is a civil case. To support this, Respondent relies on older civil cases which hold that there is a distinction "between the judicial act of *rendering* a judgment and the ministerial act of *entering* it on the record," i.e., the rendition controls because it is the actual judgment. *State ex rel. State Farm v. Murray,* 438 S.W.2d 300, 301 (Mo.App. 1969). *See Allen v. Gibbons,* 425 S.W.2d 243, 245–46 (Mo.App.1968); *Rehm v. Fishman,* 395 S.W.2d 251, 255 (Mo.App.1965).

■ The fallacy in Respondent's argument becomes apparent when the *Murray* rule is examined in context.[6] To start with, the *Murray* rule was used in civil cases when the judgment entered on the record was ambiguous or wholly lacking in detail. *See, e.g., Murray,* 438 S.W.2d at 301–02; *Allen,* 425 S.W.2d at 245–46. Moreover, the *Murray* rule gives way to another rule that still attends, namely, that other parts of a record, such as oral statements by the trial judge, cannot be used to contradict an *unambiguous* judgment. *State v. Haney,* 277 S.W.2d 632, 635–36 (Mo.1955); *Estate of Rogers v. Battista,* 125 S.W.3d 334, 341 (Mo.App.2004).

■ In contrast, the rule in *criminal cases,* i.e., that oral pronouncement of sentence governs over the written judgment if there is material conflict in the two, is a rule that attends even when the written judgment is unambiguous. *Patterson,* 959 S.W.2d at 941. This stems from the ac-

---

**4.** In answer to defense counsel's request, the trial judge said: "Well you know me well enough, Mr. Sotille [defense lawyer] to know it isn't very likely."

**5.** All of this ignores what Respondent candidly admits in his brief, namely, his lawyer interviewed the judge who held the August 28 probation revocation hearing. When asked what he intended to do on August 28, 2001, the judge answered: "[I]f 971–1365 [Case 1] was the only number mentioned on the docket sheet, and at the hearing, and on the Au-

gust 28, 2001 order then he [the judge] probably viewed case 971–1365 [Case 1] as the only cause before him on that date and did not mean to revoke both cause numbers on that date."

**6.** Questions about the continued viability of the *Murray* rule, or its possible scope under current civil procedure rules, need not be answered to resolve this case. *See* Rule 74.01(a).

cused's right to be present at the time of sentencing. *Id.* at 941[5]. Imposition of a written sentence that materially differs from the oral one would violate such a right as it would be a "new" sentence entered in the absence of the accused. *Id.*

The rule in criminal cases (that the "oral pronouncement prevails") has no place in probation revocation cases, as they are civil matters. *Turner v. State,* 784 S.W.2d 342, 344 (Mo.App.1990). Moreover, probation is not considered a "sentence" as judgments are in criminal matters. *McCulley v. State,* 486 S.W.2d 419, 423 (Mo.1972). Consequently, when Respondent characterizes a "probation revocation hearing [as] analogous to a sentencing," he is simply wrong.

When the quote from the *Murray* case (which is the basis of Respondent's argument) is considered in the context of this case, we find it has no application. Here, the judgments or order issued by the trial court are unambiguous. The initial judgment revoked probation in Case 1 on August 28, 2001, and the second revoked probation in Case 2 on November 8, 2001. Respondent points to no ambiguity in either of these judgments and we find none. In effect, Respondent asks this court to *create* an ambiguity by looking beyond the four corners of the documents. This we will not do.

Courts typically disregard a trial court's oral statements made in ruling on an issue because such statements are not part of the trial court's order or judgment. *Battista,* 125 S.W.3d at 341. "The court may consider such comments so long as they do not oppose, dispute, or impeach the judgment and are not used as a substitute for the judgment." *Id.* at 341 [10]. "[W]here the language of the judgment is plain and unambiguous, we do not look outside the four corners of the judgment for its interpretation." *Lombardo v. Lombardo,* 120 S.W.3d 232, 244 (Mo.App.2003). Construction of an order revoking probation is a question of law, and the test for ambiguity is whether the order is reasonably susceptible to different constructions. *State ex rel. Beaird v. Del Muro,* 98 S.W.3d 902, 909[16,18] (Mo.App.2003).

Since the two judgments here are unambiguous, we will not look to the transcript of the August 28 hearing to interpret those orders. As such, we reject Respondent's third argument.

In sum, we conclude that the circuit court was without jurisdiction to revoke Petitioner's probation on November 8, 2001, and order him incarcerated pursuant to the original ten-year sentence. *Cline,* 142 S.W.3d at 221. Accordingly, the judgment and sentence in Case 2 is void and Petitioner's request for habeas corpus relief is granted.

Petitioner is ordered discharged.

GARRISON and BARNEY, JJ., Concur.