Grace LINDSAY, Plaintiff–Appellant,

v.

MAZZIO'S CORPORATION d/b/a Zio's Italian Kitchen, Defendant–Respondent.

No. 25928.

Missouri Court of Appeals, Southern District, Division Two.

June 30, 2004.

---

916

Steven E. Marsh, Springfield, MO, for appellant.

Randy P. Scheer, S. Jacob Sappington, Springfield, MO, for respondent.

JEFFREY W. BATES, Judge.

Plaintiff Grace Lindsay ("Lindsay") appeals from a summary judgment granted in favor of Defendant Mazzio's Corporation d/b/a/ Zio's Italian Kitchen ("Zio's"). Lindsay argues that summary judgment was improperly granted because her case presents genuine issues of material fact requiring a trial to resolve. This court agrees. The judgment of the trial court is reversed, and the case is remanded.

## I. Facts and Procedural History

Lindsay slipped and fell at Zio's on December 6, 1998. On September 17, 2001, she filed a personal injury action against Zio's in the Circuit Court of Greene County, Missouri. Her petition alleged, *inter alia*, that she was injured because "[t]he floor of the premises was wet and extremely slick[.]"

After suit was filed, Lindsay was deposed by Zio's attorney. The following facts are drawn from her deposition testimony.[1] Lindsay was approximately 88 years old when she was deposed in July 2002. Shortly before noon on December 6, 1998, she had gone to Zio's for an after-church lunch with her daughter, Thelma Wissinger ("Wissinger"). After waiting near the entrance of Zio's for a short time, a hostess began escorting Lindsay and Wissinger to a table all the way in the back of the restaurant. Lindsay was walking behind Wissinger. As Lindsay neared the back part of the establishment, she started to turn to her left in order to walk to the table. As she turned, she slipped and fell onto her left side. Lindsay's left shoulder was dislocated and broken in the

---

1. Lindsay's complete deposition was attached as an exhibit to Zio's motion for summary judgment.

fall, causing her left arm to be pushed upward such that it appeared to be growing out of her neck. Lindsay did not see anything on the floor that caused her to fall. Immediately after the accident, however, an unknown woman customer ("the observer") spoke up and said, "That floor is wet there." The observer, who was eating lunch, was sitting at a table right beside the spot where Lindsay fell. While Lindsay was lying on the floor waiting for an ambulance to arrive, she also heard Wissinger say, "Well, this floor is wet." Wissinger was "frantic" when she made this statement because Lindsay's injuries were causing her severe pain.

In October 2002, Wissinger was deposed by Zio's attorney. The following facts are drawn from her deposition testimony.[2] Wissinger was 62 years old when she was deposed. Her mother's injury had occurred almost four years earlier. Wissinger was walking in front of her mother as they proceeded with the hostess to their table. As they reached the back part of the restaurant and turned toward their table, Wissinger realized Lindsay had fallen. She had slipped in the walkway area and was lying between two tables. Wissinger was "so distraught" because her mother was in severe pain that Wissinger didn't get the names of the witnesses sitting at these tables. Wissinger then gave the following testimony:

Q. Did you see anything on the floor in the area where your mother fell?

A. No.

Q. Didn't see anything?

A. Not that I recall now.

Q. And when I say "anything," I mean something that she could have slipped on?

A. I don't remember seeing anything, but I was not looking down.

Q. After she fell, did you see anything while you were down there helping her?

A. I don't remember that I did.

Q. Did you—do you remember anybody at the table sitting around saying that they saw something?

A. I don't. I was too distraught to hear or see much of anything.

After these depositions were taken, Zio's filed a motion for summary judgment on the ground that Lindsay had "failed to provide evidence that there was *any* substance on the floor that could have caused her fall." (Emphasis in original.) Other than the depositions of Lindsay and Wissinger, the only evidentiary matter submitted with the motion was an affidavit by Brad Ernst. According to the affidavit, Ernst was the Front–of–the–House Manager on duty when Lindsay fell. Ernst stated that "[i]mmediately after Plaintiff's fall, I assisted Plaintiff. I carefully examined the floor in the area where she fell, and I did not see any condition or substance on the floor that could have caused her to fall."

Lindsay responded to the motion for summary judgment in the appropriate manner by admitting and denying the factual statements in Zio's motion. For example, Lindsay denied Zio's factual statement that "[n]either Plaintiff nor Ms. Wissinger observed anything on the floor that could have caused Plaintiff to fall." Lindsay's response stated, in pertinent part, that "Ms. Wissinger observed that the floor was wet where Plaintiff fell.... Plaintiff was told by two other persons immediately after her fall that the floor

**2.** Wissinger's complete deposition was attached as an exhibit to Zio's motion for summary judgment.

was wet at the place she fell." Lindsay's denial was supported with specific references to discovery, exhibits or affidavits as required by Rule 74.04(c)(2).[3] The discovery references make it clear that the "two persons" mentioned in Lindsay's response were Wissinger and the observer sitting at the table right beside the spot where Lindsay fell.

As permitted by Rule 74.04(c)(2), Lindsay also set out the following additional material facts: (1) the place where Lindsay fell was routinely wet and slick because of its close proximity to a kitchen opening used by employees who tracked water and other liquids into the customer dining area; (2) warning signs were available, but were not used, because the signs impeded employees exiting the kitchen area; and (3) other persons had slipped and fallen on moisture in the area where Lindsay fell, which was adjacent to the kitchen opening. These additional factual allegations were supported by affidavits from two former Zio's employees.

Thereafter, Zio's filed a reply in which it challenged the admissibility of the statements about the floor being wet that Lindsay overheard while she was lying injured on the floor. Based on the assumed correctness of this argument, Zio's then asserted the facts contained in former employees' affidavits were irrelevant and immaterial because there still was no proof the floor was actually wet when Lindsay fell. Zio's filed a motion to strike these affidavits for this reason. However, Zio's did not deny the existence of the additional facts and support such denial with specific references to the discovery, exhibits or affidavits as required by Rule 74.04(c)(2). No sur-reply in opposition to the motion for summary judgment was filed by Lindsay.

The motion for summary judgment was argued on October 6, 2003. At the conclusion of the hearing, the trial court made a docket entry indicating concern about the admissibility of the observer's statement that the floor was wet.[4] The parties were granted additional time to brief the issue. On November 5, 2003, the trial court granted Zio's motion for summary judgment. This appeal followed.

## II. Standard of Review

 If the motion for summary judgment, response, reply and sur-reply demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law," a summary judgment shall be entered. Rule 74.04(c)(6). Our review is essentially *de novo* because we employ the same tests that the trial court must use in deciding whether to grant the motion. *Jones v. Brashears*, 107 S.W.3d 441, 444 (Mo.App.2003). Thus, we need not defer to the trial court's order granting summary judgment. *Bland v. IMCO Recycling, Inc.*, 122 S.W.3d 98, 102 (Mo.App. 2003). The propriety of a summary judgment is purely an issue of law. *Daniels v. Senior Care, Inc.*, 21 S.W.3d 133, 135 (Mo. App.2000).

---

3. All references to rules are to the Missouri Rules of Civil Procedure (2004).

4. The docket entry states: "Arguments heard on Deft's motion for summary judgment. The ct finds that pltf intends to offer hearsay stmts of unknown bystanders that the floor was wet. The ct determines that if that evidence is ruled inadmissible as hearsay, pltf lacks suffi-

cient evidence to make a submissible case and deft's motion for summary judgment should be sustained. Parties granted 7 days to submit suggestions on the admissibility of that evidence." The docket entry does not state what effect Wissinger's statement on the same subject or the additional facts set forth in Lindsay's response might have on the determination of this issue.

On appeal, we review the record in the light most favorable to the party against whom judgment was entered, and we accord the non-moving party the benefit of all reasonable inferences from the record. *Cox v. Clark*, 949 S.W.2d 231, 233 (Mo.App.1997). "A genuine issue of material fact exists where the record contains competent evidence that two plausible but contradictory accounts of essential facts exist." *Contract Freighters, Inc. v. Fisher*, 13 S.W.3d 720, 722 (Mo.App.2000). However, "[o]nly evidentiary materials that are admissible or usable at trial can sustain or avoid a summary judgment." *Partney v. Reed*, 889 S.W.2d 896, 901 (Mo. App.1994); *Blunt v. Gillette*, 124 S.W.3d 502, 503 (Mo.App.2004).

Here, the motion for summary judgment was filed by Zio's, the defendant in the lawsuit. A defending party may establish a right to judgment by showing: (1) facts that negate any one of the claimant's elements facts; (2) that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements; or (3) that there is no genuine dispute as to the existence of each of the facts necessary to support the movant's properly-pleaded affirmative defense. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 381 (Mo. banc 1993). Each of these three means establishes a right to judgment as a matter of law. *Payne v. City of Osage Beach*, 132 S.W.3d 314, 316 (Mo.App.2004).

### III. Discussion and Decision

Lindsay presents two points for us to decide. In the first point, Lindsay contends her response to Zio's motion provided the trial court with admissible evidence that the floor was wet when Lindsay fell, thereby creating a genuine issue of material fact that precluded summary judgment. In the second point, Lindsay contends Zio's failure to properly deny the additional facts in Lindsay's response meant those facts had to be considered by the trial court in ruling on the motion for summary judgment. To facilitate our discussion, we consider the points in reverse order.

### Point II—The Additional Material Facts Were Properly Before the Trial Court

Lindsay contends the trial court was required to consider the additional facts contained in her response when ruling on the motion for summary judgment. We agree. Rule 74.04(c)(2) authorizes a non-moving party's response to include "additional material facts that remain in dispute, which shall be presented in consecutively numbered paragraphs and supported in the manner prescribed by Rule 74.04(c)(1)." Lindsay's response complied with these requirements because the additional facts were supported by affidavits.

Since Lindsay's response set forth additional facts, Zio's was obligated by Rule 74.04(c)(3) to "file a statement admitting or denying each such fact. Any such denial shall be supported in the manner prescribed by Rule 74.04(c)(2)." In Zio's reply, it denied four of the five additional facts asserted in Lindsay's response. The reply, however, did not comply with Rule 74.04(c)(2) by supporting each denial with specific references to the discovery, exhibits or affidavits. Instead, Zio's claimed the additional facts were irrelevant and immaterial, and it filed a motion to strike the affidavits supporting them. After reviewing the record on appeal, we find no indication that Zio's requested or received a ruling on its motion to strike.

Since Zio's failed to properly deny the additional facts set forth in Lindsay's re-

sponse or obtain an affirmative ruling on the motion to strike the affidavits supporting them, we conclude that these additional facts were properly before the trial court. Therefore, these facts had to be considered in deciding whether a genuine issue of material fact existed.

*Point I—The Facts Contained in Lindsay's Response Were Admissible in Evidence and Created a Genuine Issue of Material Fact Precluding Summary Judgment*

■ The four elements of Lindsay's premises liability claim against Zio's are set out in M.A.I. 22.03 (1995 Revision), which is the verdict-directing instruction for an injured invitee. This pattern instruction states:

> Your verdict must be for plaintiff if you believe:
>
> First, there was (*here describe substance on floor that caused the fall*) on the floor of defendant's store and as a result the floor was not reasonably safe, and
>
> Second, defendant knew or by using ordinary care could have known of this condition, and
>
> Third, defendant failed to use ordinary care to [remove it] [barricade it] [warn of it], and
>
> Fourth, as a direct result of such failure, plaintiff sustained damage.

Zio's motion for summary judgment attacked the first of these four elements by alleging that Lindsay could not prove there was any substance on the floor which caused her to fall. In Lindsay's response, her proof that the floor was wet when she fell came from two sources: (1) the statements of Wissinger and the observer; and (2) the affidavits from the former Zio's employees. The statements of Wissinger and the observer tended to show the floor was wet, which contradicted Ernst's affida-

vit that he saw nothing on the floor. The former employees' affidavits tended to explain what made the floor adjacent to the kitchen opening wet, how the liquids could have gotten there, the dangerous nature of the floor in this area when it was wet, and Zio's knowledge of this persistent problem.

Zio's responded to all of these facts presented by Lindsay by challenging their admissibility. Zio's argued the statements of Wissinger and the observer were inadmissible hearsay, and the affidavits of the former Zio's employees were irrelevant and immaterial because there was no proof the floor was wet when Lindsay fell. Since the trial court granted summary judgment, we assume the court accepted Zio's arguments. Therefore, we proceed to review the admissibility of the facts presented in Lindsay's response.

*A. Wissinger's Statement*

■ In Lindsay's deposition, she testified that she heard Wissinger say the floor was wet. Wissinger made this statement almost immediately after the accident while Lindsay was lying injured on the restaurant floor, waiting for an ambulance to arrive. Wissinger was "frantic" and "distraught" when she made the statement because her mother had suffered a serious dislocation and fracture of her left arm and was in severe pain.

■ Hearsay is any out-of-court statement offered to prove the truth of the matter asserted. *State v. Crump,* 986 S.W.2d 180, 188 (Mo.App.1999). Since Lindsay is offering Wissinger's statement to prove the floor was wet, this statement is not admissible unless it falls within a recognized exception to the hearsay rule. *State v. Revelle,* 957 S.W.2d 428, 431 (Mo. App.1997). We conclude that Wissinger's statement is admissible as an excited ut-

terance and as a prior inconsistent statement.

Missouri recognizes an "excited utterance" as a firmly-rooted exception to the hearsay rule. *See State v. Costa,* 11 S.W.3d 670, 679 (Mo.App.1999). In *State v. Edwards,* 31 S.W.3d 73 (Mo.App.2000), our colleagues from the western district of this court summed the essential attributes of this exception in the following way:

> The essential test for admissibility of an excited utterance is whether it was made under such circumstances as to indicate it is trustworthy. The rationale of this exception to the hearsay rule is that, if the statement is made under the immediate and uncontrolled domination of the senses as a result of the shock produced by an event, the utterance may be taken as expressing the true belief of the declarant. "The utterance must be made under the immediate and uncontrolled dominion of the senses and during the time when consideration of self-interest could not have been brought to bear through reflection or premeditation."

*Id.* at 78 (citations omitted). We believe Wissinger's statement meets these requirements. She made the statement about the floor being wet while under the immediate and uncontrolled domination of her senses as a result of the shock of seeing her mother lying on the floor, seriously injured and in severe pain. Furthermore, the statement discloses something done, seen or heard by the speaker in the course of the accident, which is another attribute of an excited utterance. *See Bynote v. National Super Markets, Inc.,* 891 S.W.2d 117, 123 (Mo. banc 1995). Since Wissinger's statement about the floor being wet constitutes an excited utterance, Lindsay's testimony that she heard Wissinger make the statement is admissible to prove the floor was wet when Lindsay fell.

Wissinger's statement also is admissible as substantive evidence to prove the floor was wet because it constitutes a prior inconsistent statement. In 1985, Missouri adopted the rule that a party can impeach his or her own witness in a civil case with a prior inconsistent statement. *Rowe v. Farmers Ins. Co., Inc.,* 699 S.W.2d 423, 425 (Mo. banc 1985). One reason the Missouri Supreme Court abandoned the orthodox rule and adopted this new approach was to give fact-finders the benefit of a witness' statements made nearer in time to the critical events that form the basis for the lawsuit:

> Research regarding human memory indicates several advantages prior inconsistent statements have over trial testimony. Studies have disclosed that the ability to remember an incident declines as time passes. J. Marshall, Law and Psychology in Conflict 29–30 (2d ed.1980). McCormick explains that "[t]he prior statement is always nearer and usually very much nearer to the event than is the testimony. The fresher the memory, the fuller and more accurate [any statement] is." McCormick, Handbook of the Law of Evidence § 251, at 745 (3d ed.1984). *See also* 3A Wigmore, Evidence § 1018 (Chadbourn rev.1970); Morgan, Hearsay Dangers and the Application of the Hearsay Concept, 62 Harv.L.Rev. 177, 192 (1948).

*Id.* at 426. A prior inconsistent statement of a witness who is available for cross-examination may be used as substantive evidence in a civil trial. *Id.* at 428.

In Zio's reply in support of its motion for summary judgment, it addressed Lindsay's testimony about her daughter's statement in this manner: "It is significant that [P]laintiff's own daughter, whom Plaintiff alleges told her that the floor was wet, disagrees. Thelma Wissinger testified that she did not see anything on the floor

that could have caused her mother to fall." Earlier in this opinion, we quoted the testimony from Wissinger's deposition upon which Zio's relies. The transcript demonstrates that when Wissinger was asked whether she saw anything on the floor while she was down there helping her mother, her answer was, "I don't remember that I did." Wissinger was not asked whether she made the statement attributed to her by Lindsay.

If Wissinger is called as a witness at trial by Lindsay, her counsel would have a right to lay a foundation for impeachment by quoting the prior inconsistent statement, reminding Wissinger of the precise circumstances under which it was made, and asking her whether she made the statement. *See Long v. St. John's Regional Health Center, Inc.*, 98 S.W.3d 601, 606 (Mo.App.2003). This would give Wissinger the opportunity to refresh her recollection of the statement and to admit, deny, or explain it. *Id.* If Wissinger admitted making the statement, she would stand impeached by her own testimony. *See Litton v. Kornbrust*, 85 S.W.3d 110, 114 (Mo.App. 2002). If Wissinger denied or could not recall making the statement, extrinsic evidence in the form of Lindsay's testimony would be admissible to impeach Wissinger. *See Aliff v. Cody*, 26 S.W.3d 309, 318 (Mo. App.2000). Either way, Wissinger's statement would be admissible as substantive evidence to meet Lindsay's burden of proving an element necessary to make a submissible case. *See Elliot v. Kesler*, 799 S.W.2d 97, 102–03 (Mo.App.1990).

### B. The Observer's Statement

■ The observer's statement also is being offered for the truth of the matter asserted. Accordingly, it likewise must come within a recognized exception to the hearsay rule to be admissible. *Crump*, 986 S.W.2d at 188; *Revelle*, 957 S.W.2d at 431. We find the "present sense impression" exception applicable here. "[C]ourts commonly accept an out-of-court statement which constitutes a declarant's present sense impression, 'a declaration uttered simultaneously, or almost simultaneously, with the occurrence of the act.'" *Crump*, 986 S.W.2d at 188. The observer's statement was made immediately after Lindsay fell and described what the observer was seeing at the time. Consequently, the observer's present sense impression is admissible to prove the floor was wet where Lindsay fell.

### C. The Affidavits of the Former Zio's Employees

As there was competent evidence before the trial court that the floor was wet when Lindsay fell, the additional facts presented in the response were relevant, material and admissible to help defeat Zio's motion for summary judgment. The affidavits of the former Zio's employees tend to explain what made the floor near the kitchen opening wet and how the liquid got there. More importantly, it showed the dangerous nature of the floor in this area when it was wet. In one affidavit, the employee recounted that she slipped and fell in the kitchen opening when it was slick from liquids that had been tracked onto the dining room floor by Zio's employees. In the other affidavit, the former employee stated she was personally aware of other co-workers slipping and falling on the floor around the kitchen opening for the same reason. Evidence of prior accidents is admissible "if the evidence is of an accident of like character that occurred under substantially the same circumstances and resulted from the same cause." *Lopez v. Three Rivers Elec. Co-op., Inc.*, 26 S.W.3d 151, 159 (Mo. banc 2000). The additional facts contained in Lindsay's response helped create a genuine issue of material

fact concerning whether Zio's floor in the area of the kitchen opening, where Lindsay fell, was not reasonably safe when it got wet.

In conclusion, Zio's has failed to carry its burden of showing that it was entitled to judgment as a matter of law. We find this case does involve genuine issues of material fact that require a trial to resolve.

Therefore, the judgment of the trial court is reversed, and the case is remanded.

PREWITT and PARRISH, JJ., concur.